THE STATE OF OHIO, APPELLANT, *v.* CALHOUN, APPELLEE.

[Cite as State *v.* Calhoun (1985), 18 Ohio St. 3d 373.]

(No. 84-1569—Decided August 7, 1985.)

*Lee C. Falke,* prosecuting attorney, and *Ted E. Millspaugh,* for appellant.

*James A. Hensley,* for appellee.

DOUGLAS, J. The issue presented in this case is whether a subsequent retrial of a criminal defendant based on the same indictment is barred by double jeopardy where a trial judge *sua sponte* rules midtrial that the statute upon which the indictment is based is unconstitutionally vague and thereupon terminates the proceedings. For the reasons that follow, this court holds that double jeopardy principles do not apply so as to bar retrial of the appellee under the facts and circumstances of this case.

It is undisputed that jeopardy had attached in this case prior to the dismissal of the indictment because, at the time of the dismissal, the jury had been impanelled and sworn. *Crist* v. *Bretz* (1978), 437 U.S. 28; *Downum* v. *United States* (1963), 372 U.S. 734. The question thus becomes whether retrial is barred by the prohibition against double jeopardy.

Appellee asserts essentially that a retrial would violate the Double Jeopardy Clause's prohibition against retrial inasmuch as a reversal of the dismissal would clearly require additional proceedings because there has not been a resolution of the factual elements of the offense charged. The state, in support of its position that retrial should not be barred, relies heavily on language in *United States* v. *Scott* (1978), 437 U.S. 82, to the effect that retrial is not barred where the dismissal is premised on legal grounds since no determination of factual guilt or innocence has been made.

It does not appear that the United States Supreme Court has addressed the precise issue presented by the appeal herein. In considering this issue, this court has come to appreciate Justice Rehnquist's observation that "* * * the decisional law in the area [of the Double Jeopardy Clause] is a veritable Sargasso Sea which could not fail to challenge the most intrepid judicial navigator * * *." *Albernaz* v. *United States* (1981), 450 U.S. 333, 343.

In support of its position, the state cites *United States* v. *Scott, supra. Scott,* however, is not directly on point. In *Scott,* the court was concerned with the permissibility of a government appeal following the trial judge's midtrial dismissal on the ground of prejudical pretrial delay pursuant to motions made by the defendant. In contrast, the dismissal in the instant case was made *sua sponte* by the trial court. Nonetheless, the analytical approach used by the court in *Scott* is instructive.

In *Scott,* the court embarked on a new course of analysis with respect to the Double Jeopardy Clause. First, the *Scott* court overruled its prior holding in *United States* v. *Jenkins* (1975), 420 U.S. 358. *Jenkins* had held at 370 that the government had no right to appeal the dismissal of an indictment after jeopardy had attached since "* * * further proceedings of

some sort, devoted to the resolution of factual issues going to the elements of the offense charged, would have been required on reversal and remand." (Reaffirmed in *Lee* v. *United States* [1977], 432 U.S. 23.)

The court in *Scott* replaced the *Jenkins* test with a new test, wherein the public's interest in the government's right to appeal an erroneous conclusion of law is to be balanced against the interest of the defendant in avoiding a second trial. The court in *Scott* focused on whether the termination of the proceedings had been on a ground related to the defendant's guilt or innocence, and emphasized that the public's interest in assuring that each defendant shall be subject to a just judgment on the merits of the case will be fostered by permitting appeals, and thereafter retrials where appropriate, where the termination of the first trial resulted from an erroneous conclusion of law. *Id.* at 101. The court reasoned that under such circumstances, the defendant "* * * has not been 'deprived' of his valued right to go to the first jury; only the public has been deprived of its valued right to 'one complete opportunity to convict those who have violated its laws.' " *Id.* at 100.

In analyzing the instant case in the analytical framework set forth in *Scott,* this court finds that to bar retrial under the factual setting presented herein would deprive the public of its opportunity to convict those who have violated its laws. This court stresses at the outset, and it is crucial to our decision today, that the trial court herein did not terminate these proceedings on the ground that the prosecution's case was factually insufficient. This court fully recognizes that the termination on such a ground would be tantamount to an acquittal and would operate as a bar to any further prosecution. (See *Burks* v. *United States* [1978], 437 U.S. 1; *Greene* v. *Massey* [1978], 437 U.S. 19.) Indeed, it is well-established that the prosecution is only entitled to one opportunity to mount its case against the defendant and its failure to do so adequately will not be permitted to act to the detriment of the defendant. As was stated in *Burks* v. *United States, supra,* at 11, "[t]he Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding. * * *"

To the contrary, the record in this case indicates that the trial court's reasoning for terminating the proceedings was not premised upon the insufficiency of the prosecutor's evidence. The trial judge likewise did not determine that appellee was innocent of the underlying count.

Rather, the court made a ruling on a point of law that resulted in the termination of the case, *i.e.,* that the statute underlying the indictment was unconstitutionally vague. Notedly, this is not a case in which the prosecution has sought to use its superior resources to wear the defendant down by submitting the matter to successive tribunals in the hopes of securing an eventual conviction. *Scott, supra,* at 87. There was no prosecutorial or judicial overreaching in the instant case, but merely a good-faith trial-type error made by the presiding judge. At least in the absence of an

acquittal or a termination based on a ruling that the prosecution's case was legally insufficient, no interest protected by the Double Jeopardy Clause precludes a retrial when reversal is predicated on trial error alone. See, generally, *Burks* v. *United States, supra;* cf. *Sanabria* v. *United States* (1978), 437 U.S. 54. The purpose of the Double Jeopardy Clause is to preserve for the defendant acquittals or favorable factual determinations but not to shield from appellate review erroneous legal conclusions not predicated on any factual determinations.

The double jeopardy claim in this case is thus purely formalistic, and the United States Supreme Court has, of late, consistently rejected such claims. Inasmuch as the dismissal was the result of a good-faith trial-type error of the presiding judge, no legitimate interest of the defendant would be sacrificed by retrial. The fact remains that the jury had neither found appellee guilty nor voted for his acquittal. Both the defendant and the state are entitled to have one complete trial which terminates in a verdict on a finding that the state's case is legally insufficient to sustain a conviction.

Accordingly, this court holds that where a trial judge rules midtrial that the statute upon which an indictment is based is unconstitutionally vague and thereupon dismisses the indictment, double jeopardy does not bar retrial.

For the foregoing reasons, the judgment of the court of appeals is reversed.

*Judgment reversed.*

CELEBREZZE, C.J., SWEENEY, LOCHER and HOLMES, JJ., concur.

C. BROWN and WRIGHT, JJ., dissent.

WRIGHT, J., dissenting. The policy underlying the Double Jeopardy Clause is that the state "* * * should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity * * *." *Green* v. *United States* (1957), 355 U.S. 184, 187. The Supreme Court has also stated that "* * * [t]he danger of such unfairness to the defendant exists whenever a trial is aborted before it is completed. Consequently, as a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial." *Arizona* v. *Washington* (1978), 434 U.S. 497, 504-505. These policy considerations are ill-served by the result reached today.

The rules regarding the protections of the Double Jeopardy Clause are somewhat cryptic, but this much is certain: If a prosecutor's motion for a mistrial is granted over the defendant's objection, the prosecutor carries the burden of demonstrating the "manifest necessity" of the mistrial in

order to avoid the double jeopardy bar. See *Arizona* v. *Washington, supra,* at 505. If a defendant's motion for mistrial is granted, there is no bar to reprosecution. See *United States* v. *Jorn* (1971), 400 U.S. 470, 485; *United States* v. *Scott* (1978), 437 U.S. 82, 93. Likewise, if a trial judge aborts a proceeding during the course of the trial without the defendant's consent, the defendant has been denied his " 'valued right to have his trial completed by a particular tribunal,' " and retrial is barred absent a showing of "manifest necessity." See *Jorn, supra,* at 484-485.

The facts of the instant case place it squarely within the third standard enunciated above. In fact, the trial court on remand specifically determined that the dismissal was done on *the trial judge's own motion over the defendant's objection.* In making our determination of whether there was "manifest necessity" for the abortion of the proceeding, we are guided by the balancing test of *United States* v. *Scott, supra,* wherein the Supreme Court stated that we must balance " 'the valued right of a defendant to have his trial completed by the particular tribunal summoned to sit in judgment on him,' * * * against the public interest in insuring that justice is meted out to offenders." *United States* v. *Scott,* at 92.

A careful application of these standards yields only one result: There was no "manifest necessity" for the termination of the proceedings because the trial judge had at his disposal less extreme alternatives that would have effectively dealt with the problem. The trial judge could have applied the prosecutor's interpretation of the statute and allowed the trial to proceed to its conclusion and thereby protected the defendant's "valued right" in having his case determined by a particular tribunal. If the jury had convicted defendant, the issue of the constitutionality of the statute would have been reserved for appellate review and the defendant's rights would have been protected. However, the judge considered no option other than dismissal. The Supreme Court stated in *United States* v. *Perez* (1824), 22 U.S. (9 Wheat.) 579, 580, that the power of discharging a jury before verdict "* * * ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes, * * *." The actions at bar obviously do not meet that standard. The Supreme Court has also stated that "* * * [t]he important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed * * *." *United States* v. *Dinitz* (1976), 424 U.S. 600, 609. Defendant herein had no control over his destiny. Instead, this case presents a situation where a proceeding was taken from the jury against defendant's will when there was a more appropriate course of action available.

The majority concedes that jeopardy attached in the first proceeding and that the trial court ended the proceeding *sua sponte* over defendant's objection. Since there was no manifest necessity for the trial judge's actions, I cannot concur in the majority's result. The prosecution of an al-

leged wrongdoer should be allowed whenever possible, but not in a case where constitutional provisions prohibit same.

Accordingly, I respectfully dissent.

C. BROWN, J., concurs in the foregoing dissenting opinion.